```
 1                    UNITED STATES DISTRICT COURT
                      FOR THE DISTRICT OF HAWAII
 2

 3   UNITED STATES OF AMERICA,   )  Case No. CR08-00655DAE
                                 )
 4                               )
             Plaintiff,          )  Honolulu, Hawaii
 5                               )  May 25, 2010
                 v.              )  1:04 p.m.
 6                               )
     RYAN MATHERS,               )
 7                               )
                                 )
 8           Defendant.          )
     _____)
 9

10    TRANSCRIPT OF WITHDRAWAL OF NOT GUILTY PLEA AND TO PLEAD ANEW
                 BEFORE THE HONORABLE BARRY M. KURREN
11                  UNITED STATES MAGISTRATE JUDGE

12   APPEARANCES:

13   For the Plaintiff:          U.S. ATTORNEY'S OFFICE
                                 By:  CHRIS THOMAS, ESQ.
14                               300 Ala Moana Boulevard, #6100
                                 Honolulu, Hawaii 96850
15

16   For the Defendant:          FEDERAL PUBLIC DEFENDER'S OFFICE
                                 By:  MATTHEW WINTER, ESQ.
17                               300 Ala Moana Boulevard, #7104
                                 Honolulu, Hawaii 96850
18

19

20

21

22   Transcription Service:      Jessica B. Cahill
                                 P.O. Box 1652
23                               Wailuku, Maui, Hawaii 96793
                                 Telephone: (808)244-0776
24

25   Proceedings recorded by electronic sound recording;
     transcript produced by transcription service.
```

1        THE CLERK:  The United States District Court for the

2 District of Hawaii with the Honorable Barry M. Kurren, United

3 States Magistrate Judge presiding is now convened.  You may

4 be seated.

5        Criminal number 08-655DAE, United States of America

6 versus defendant (01) Ryan Mathers.  This case has been

7 called for a hearing on a motion for withdrawal of non-guilty

8 plea and to plead anew.

9        MR. THOMAS:  Good afternoon, Your Honor, Chris

10 Thomas for the United States.

11        THE COURT:  Good afternoon.

12        MR. WINTER:  And good afternoon, Your Honor, Matthew

13 Winter on behalf of Ryan Mathers.  He's with me on bond at

14 counsel table.  Is it okay if he sits down during the plea?

15 He has an injury --

16        THE COURT:  Oh, absolutely.

17        MR. WINTER:  -- he sustained when he was overseas.

18 Okay.

19        THE COURT:  Yeah.

20        MR. WINTER:  Thank you so much.

21        THE COURT:  Good afternoon.  The only thing I would

22 insist upon though is make sure you get the microphone close

23 to your --

24        MR. WINTER:  Yeah, will do.

25        THE COURT:  -- mouth.  So you can sit down and do

1  this, but just, you know, get that -- get that guy way down.

2  I think it comes down pretty much.

3        MR. WINTER:  Thank you.

4        THE COURT:  Okay.  Ready to go?  So, Mr. Winter, I

5  understand that Mr. Mathers is prepared this afternoon to

6  change his plea.  There's a plea agreement, and he's

7  consenting to enter his plea before a Magistrate Judge.

8        MR. WINTER:  All correct.

9        THE COURT:  Okay.  Thank you.  Mr. Mathers, before

10 the Court can accept your guilty plea I must know that you

11 understand what you are doing, and that you're pleading

12 guilty freely and voluntarily.

13       In order for me to this determination I'm going to

14 be asking you a number of questions.  If you do not

15 understand any of my questions please let me know.  I'm going

16 to have you sworn in.

17                         RYAN MATHERS

18 After having been first duly sworn was examined and testified

19 as follows:

20       THE COURT:  Okay.  Would you state your full name,

21 please?

22       THE DEFENDANT:  Ryan Michael Mathers.

23       THE COURT:  Mr. Mathers, how old are you?

24       THE DEFENDANT:  Twenty-two years old.

25       THE COURT:  How far did you go in school?

1       THE DEFENDANT:  Graduated high school.

2       THE COURT:  Okay.  Have you taken any medication,

3  alcohol, or drugs of any kind today?

4       THE DEFENDANT:  No.

5       THE COURT:  Have you been treated recently for any

6  mental illness or addiction to narcotic drugs?

7       THE DEFENDANT:  No, I have not.

8       THE COURT:  Do you feel well and alert today?

9       THE DEFENDANT:  Yes, I do.

10       THE COURT:  Do you understand why you are here in

11  court this afternoon?

12       THE DEFENDANT:  I do.

13       THE COURT:  And what is your understanding of the

14  purpose of this hearing?

15       THE DEFENDANT:  To change my plea to a guilty plea

16  and continue the process --

17       THE COURT:  Okay.

18       THE DEFENDANT:  -- of getting this over with.

19       THE COURT:  So have you had enough time to come to

20  this decision:?

21       THE DEFENDANT:  Yes, I have.

22       THE COURT:  I gather you've talked this over fully

23  with Mr. Winter.

24       THE DEFENDANT:  I have.

25       THE COURT:  Do you understand everything that he's

1  told you about the case and about what may -- what may happen

2  to you based upon your guilty plea?

3          THE DEFENDANT:  Yes.

4          THE COURT:  Are you satisfied with the legal

5  representation that you've been provided?

6          THE DEFENDANT:  I am.

7          THE COURT:  Mr. Winter, to the best of your

8  knowledge, is Mr. Gathers [sic] -- Mr. Mathers, rather, fully

9  competent to enter a valid plea?

10          MR. WINTER:  I believe he is, Your Honor.

11          THE COURT:  Okay.  Thank you.  Mr. Mathers, if you

12  choose to enter a guilty plea you, of course, have the right

13  to enter your plea before the District Judge who is assigned

14  to your case and that is Judge Ezra.

15          If you consent, however, you may enter your plea

16  before me, a Magistrate Judge.  I do want to point out that

17  if you enter your plea before me, it still will be Judge Ezra

18  who will sentence you at a later hearing.  Do you understand

19  this?

20          THE DEFENDANT:  I do.

21          THE COURT:  Do you consent to enter your plea before

22  a Magistrate Judge and waive or give up your right to enter

23  your plea before the District Judge who is assigned to your

24  case?

25          THE DEFENDANT:  Yes.

1           THE COURT:  And I have a consent form that I know

2  you discussed briefly with Mr. Winter.  And is this your

3  signature that is on the second page of this document?

4           THE DEFENDANT:  Yes, it is.

5           THE COURT:  And did you read this over and discuss

6  it with Mr. Winter before you signed it?

7           THE DEFENDANT:  Yes.

8           THE COURT:  And do you understand everything in this

9  consent form?

10          THE DEFENDANT:  I do.

11          THE COURT:  Mr. Mathers, I also have here the

12 original of the plea agreement, and is this your signature

13 that is on the last page of the plea agreement?

14          THE DEFENDANT:  Yes, it is.

15          THE COURT:  Did you read the plea agreement over

16 carefully before you signed it?

17          THE DEFENDANT:  Yes.

18          THE COURT:  Did you also have an opportunity to

19 discuss it with Mr. Winter?

20          THE DEFENDANT:  Yes.

21          THE COURT:  Do you understand all of the terms of

22 the plea agreement in this case?

23          THE DEFENDANT:  Yes.

24          THE COURT:  Does this plea agreement cover every

25 aspect or every part of the agreement that you've entered

1    into with the Government?

2            THE DEFENDANT:  Yes.

3            MR. WINTER:  Your Honor, I should state there's --

4    there's one additional point.  It's our understanding that

5    neither the United States Government or the military -- the

6    Marines in this case, will go forward with any theft case

7    concerning the stolen property, the PVS-14 night vision

8    goggles --

9            THE COURT:  Okay.

10           MR. WINTER:  -- that are the subject of this plea

11   agreement.

12           THE COURT:  Okay.  And that's not -- that's not

13   specifically set forth in the plea agreement?

14           MR. WINTER:  Correct.

15           THE COURT:  But that's another aspect of this that

16   everybody's agreed to?

17           MR. WINTER:  Correct.

18           THE COURT:  Mr. Thomas, is that correct?

19           MR. THOMAS:  That's correct, Your Honor.

20           THE COURT:  Okay.

21           MR. THOMAS:  But -- but --

22           THE COURT:  I'm sorry, go ahead.

23           MR. THOMAS:  However, Mr. Mathers will be separated

24   from the United States Marine Corp, Your Honor.

25           THE COURT:  Okay.  Okay.  Do you understand these

1  other aspects of the -- of the agreement here?

2          THE DEFENDANT:  Yes, I do.

3          THE COURT:  Okay.  So except for what we've now

4  discussed any other promises or assurance of any kind in an

5  effort to induce you to plead guilty?

6          THE DEFENDANT:  No.

7          THE COURT:  Now, has anyone attempted, in any way,

8  to force you to plead guilty, or to pressure you, or threaten

9  you in any way?

10         THE DEFENDANT:  No.

11         THE COURT:  And, Mr. Thomas, would you summarize

12 then the terms of the agreement?

13         MR. THOMAS:  Yes, Your Honor.  Mr. Mathers will

14 enter pleas of guilty to Counts 1, 3, 4, and 11 of the second

15 superseding indictment.  The Government agrees to dismiss

16 Counts 2, 5 through 10, and 13 of the second superseding

17 indictment against Mr. Mathers after sentencing.

18         For sentencing purposes, however, Mr. Mathers agrees

19 to be held responsible for his relevant conduct relating to

20 his exportation of defense articles as charged in Counts 5

21 through 10.

22         Your Honor, Mr. Mathers agrees that the maximum

23 penalties are as set forth in paragraph 7.  Mr. Mathers

24 admits to the facts as true as contained in paragraph 8.

25         Mr. Mathers knowingly and voluntarily waives his

1  right to appeal his sentence, and he waives his right to

2  challenge this sentence by -- by way of any collateral

3  proceeding such as a petition pursuant to Title 28, U.S.C.,

4  Section 2255, except in the instance of a claim of

5  ineffective assistance of counsel as set forth in paragraph

6  18.

7          Mr. Mathers may also appeal the sentence in this

8  case of an upward variance from his guideline range.  Mr.

9  Mathers understands that the Government retains its right to

10 appeal.  Thank you, Your Honor.

11         THE COURT:  Okay.  Mr. Mathers, do you understand

12 these points that Mr. Thomas just covered?

13         THE DEFENDANT:  Yes.

14         THE COURT:  And does that accurately state the

15 agreement you've reached with the Government?

16         THE DEFENDANT:  Yes.

17         THE COURT:  Let me go over this waiver of appeal

18 provisions, so that I'm sure you understand it.

19         Ordinarily, you would have the right to have a

20 higher court review what happens to you here in District

21 Court.  This is the right of appeal that one has in these

22 cases.

23         By this agreement you are essentially giving up that

24 right.  There are two limited exceptions to this waiver of

25 appeal provision; if Judge Ezra goes higher than what the

 1    guidelines call for you -- you still would be able to appeal

 2    that portion of the sentence above the guideline range.

 3         If your attorney is ineffective in representing you

 4    that could be the basis for a challenge to your case, but as

 5    a practical matter if -- if Judge Ezra stays within the

 6    guideline range or is below the guideline range, even if it's

 7    a sentence that you are very unhappy with that's the sentence

 8    you're going to have to live with, no appeal or review of

 9    that sentence.  Do you understand that?

10         THE DEFENDANT:  Yes, I do.

11         THE COURT:  Counts 1 and 3 are conspiracy counts.

12    They involve a conspiracy to sell protected merchandise prior

13    to exportation.  And Count 2, is -- is -- charges you with an

14    attempt to sell protected merchandise prior to exportation,

15    and Counts 4 through 11, and 13 involve the charge of

16    exportation of a defense article without a license.  Do you

17    understand all of these charges that are set forth in these

18    counts, Mr. Mathers?

19         THE DEFENDANT:  Yes, I do.

20         THE COURT:  As Mr. Thomas mentioned, the maximum

21    penalties that are applicable to these charges are summarized

22    in paragraph 7, and they are as follows:

23         For Counts 1 and 3, the maximum term of imprisonment

24    is 5 years, the maximum fine is $250,000, the maximum term of

25    supervised release is three years.

1              Then for Counts 4 and 11, the maximum term of

2    imprisonment, and this is for each of these counts, is ten

3    years, the maximum fine is $1 million, the maximum term of

4    supervised release is three years.  Do you -- do you

5    understand that these are the maximum penalties that apply to

6    these charges?

7              THE DEFENDANT:  Yes.

8              THE COURT:  So the first thing I want to say about

9    these charges is that because they are separate charges, the

10   Court does the authority to order any penalties imposed be

11   served separately, in other words, one after the other -- do

12   you understand -- consecutively.  Do you understand that

13   that's possible?  He could stack the penalties, in other

14   words.  Do you understand that?

15             THE DEFENDANT:  Yes, sir.

16             THE COURT:  Okay.  And I also neglected to mention

17   there's a $100 special assessment for each count as well

18   that's imposed.  Do you understand that?

19             THE DEFENDANT:  Yes.

20             MR. WINTER:  Your Honor --

21             THE COURT:  And I mentioned supervised release --

22             MR. WINTER:  -- if I could have just one moment.

23             THE COURT:  Sure.

24             MR. WINTER:  Thank you, Your Honor.

25             THE COURT:  Okay.  Mr. Mathers, supervised release

1   is like probation, but it is after a jail term.  If you are

2   required to serve a term of supervised release, during that

3   term you will have to follow certain conditions that a

4   probation officer will review with you.

5          If during a term of supervised release it is

6   determined that you had violated any of the conditions of

7   supervised release , you could be required to serve

8   additional prison time.  Do you understand this?

9          THE DEFENDANT:  Yes, I do.

10          THE COURT:  Are you on probation, parole, or

11   supervised release in any other criminal case?

12          THE DEFENDANT:  No, I'm not.

13          THE COURT:  And I gather, Mr. Mathers, you are a

14   U.S. citizen; is that correct?

15          THE DEFENDANT:  Yes, sir.

16          THE COURT:  Now, are there any forfeiture issues or

17   restitution applicable here?

18          MR. THOMAS:  Well, Your Honor, the -- the night

19   vision goggles that were the subject matter of these counts

20   are -- are going to be forfeited.

21          THE COURT:  Okay.  Mr. Mathers, federal law

22   establishes detailed sentencing guidelines which the Court

23   certainly will consider when imposing the sentence.  These

24   guidelines are advisory, however, so the Court does have the

25   authority to impose a sentence that is either higher than

1  what the guidelines call for or lower than what the

2  guidelines call for.

3          Now, the Court will be considering other sentencing

4  factors that are set forth in Title 18, United States Code,

5  Section 3553(A).  Have you and Mr. Winter discussed how the

6  -- how these guidelines and other sentencing factors might

7  apply to your case?

8          THE DEFENDANT:  Yes.

9          THE COURT:  And do you understand that the

10  guidelines -- the way in which the guidelines apply to your

11  case will not be determined until after a presentence

12  investigation has taken place, and a report is prepared, and

13  both you and the Government have had an opportunity to review

14  this report and to object to anything in it you do not agree

15  with?

16          THE DEFENDANT:  Yes.

17          THE COURT:  And do you understand that the Court's

18  determination as to who the guidelines apply to your case may

19  be different from what your attorney has estimated for you.

20  Do you understand that?

21          THE DEFENDANT:  Yes, I do.

22          THE COURT:  And do you also understand that if your

23  sentence is more severe or worse than you expected you will

24  still be bound by your plea, you will have no right to

25  withdraw it.  Do you understand that?

1       THE DEFENDANT:  Yes.

2       THE COURT:  And there is no parole, so that if you

3  are sentenced to prison you will not be released on parole.

4  Do you understand that?

5       THE DEFENDANT:  Yes.

6       THE COURT:  Now, you of course have the right to

7  plead not guilty, persist in that plea, and have your case

8  proceed to a jury trial.  If you wanted your case to go to

9  trial, in that trial you would have the right to assistance

10  of counsel for your defense, the right to see and hear all of

11  the witnesses, the right to have your attorney cross-examine

12  those witnesses, the right to testify or to decline to

13  testify and remain silent.  You also have the right to call

14  witnesses in your behalf and have the Court issues subpoenas

15  for any witnesses you wish to call in your defense.

16       At the trial you would be presumed to be innocent.

17  The Government would have to prove your guilt beyond a

18  reasonable doubt before you can be convicted of any of the

19  charges against you.  Since you have the right to a jury

20  trial, that means that all 12 jurors would have to be

21  convinced that the Government has established your guilt

22  beyond a reasonable doubt before you can be convicted.

23       Now, if you are convicted in a trial, after the

24  trial is over you would have the right to appeal that

25  conviction to a higher court.  If you could not afford to pay

1    the costs of an appeal the Government would pay those costs

2    for you.

3            Do you understand your right to a trial and these

4    other rights that I just mentioned?

5            THE DEFENDANT:  Yes.

6            THE COURT:  When you plead guilty that means there

7    -- there will be no trial.  So you're giving up your right to

8    a trial, and you're giving up these other rights that I

9    referred to.  Do you understand that?

10           THE DEFENDANT:  Yes, I do.

11           THE COURT:  One of the rights that I mentioned is

12   the right to remain silent.  This is the right that you have

13   not to say anything about what happened or about what you

14   did.  When you plead guilty, however, you will have to make a

15   statement about what you did even if what you say establishes

16   that you committed a crime.  Do you understand this?

17           THE DEFENDANT:  Yes.

18           THE COURT:  Mr. Thomas, would you summarize the

19   elements of the offenses that Mr. Mathers is pleading guilty

20   to?

21           MR. THOMAS:  Yes, Your Honor, Counts 1 and 3 are

22   conspiracy counts.  The difference being that Mr. Mathers is

23   charged with conspiring with defendant Abram in Count 1 and

24   with defendant Carper in Count 3.

25           Your Honor, the elements for a conspiracy, there are

1   two elements, or actually three elements.  First, that

2   beginning on or about October, or excuse me, beginning on or

3   about March 2008, through and including October 28, 2008,

4   there was an agreement between two or more persons to commit

5   at least one crime as charged in the indictment.

6          Second, defendant became a member of the conspiracy

7   knowing of at least one of its objects and intending to help

8   accomplish it.

9          And, third, that one of the members of the

10  conspiracy performed at least one overt act for the purpose

11  of carrying out the conspiracy.

12         Your Honor, the underlying substantive offense for

13  the conspiracies was exportation, or excuse me, selling

14  merchandise prior to exportation.  That's a violation of 18

15  U.S.C. 554.  There are three elements to that.

16         First, that the defendant sold or in any manner

17  facilitated the transportation of merchandise and an article

18  or object prior to exportation.

19         Second, that the defendant knew that the

20  merchandise, article or object intended for exportation would

21  be contrary to any law or regulation of the United States.  In

22  this case 22 C.F.R., Section 123.1, which requires an export

23  license.

24         And, third, that the defendant acted willfully with

25  intent to defraud the United States.

1          Your Honor, Mr. Mathers is also pleading guilty to

2    Counts 4 and 11, and those are violations of 22 U.S.C. 2778,

3    exportation of defense articles without a license.  There are

4    three elements to that offense, Your Honor.

5          First, that the defendant exported, attempted to

6    export, or caused to be exported from the United States an

7    article listed on the munitions list or technology relating

8    to an article on the munitions list.

9          And, second, that the defendant did not obtain a

10   license or written approval for the export from the State

11   Department.

12         Third, that the defendant did such acts willfully.

13   Thank you, Your Honor.

14         THE COURT:  Mr. Mathers, do you understand these

15   points?

16         THE DEFENDANT:  Yes, I do.

17         THE COURT:  These are the elements of the offenses

18   that are set forth in the counts that you're pleading guilty

19   to.

20         Now, if your case were to go to trial on these

21   particular charges, each of these elements, each of the

22   points that Mr. Thomas just covered they would have to be

23   proven to a jury beyond a reasonable doubt before you could

24   be convicted of these offenses.  Do you understand that?

25         THE DEFENDANT:  Yes.

1      THE COURT:  Mr. Thomas, would you summarize the

2  facts, please?

3      MR. THOMAS:  Your Honor, for the record the -- the

4  Government adopts the facts as contained in the memorandum

5  plea agreement, pages 4 through -- 4 through 8, Your Honor.

6      THE COURT:  Right.

7      MR. THOMAS:  Your Honor, as to -- as to Count 1, on

8  or about October 19, 2008, Mr. Mathers listed an PVS-14

9  Generation 3 night vision monocular device, otherwise known

10  as PVS-14 on an eBay auction.

11      Mathers and co-defendant Abram had an agreement to

12  sell these PVS-14s that were stolen from the Third Marine

13  Regimen Armory at the Marine Corp Base Hawaii, Kaneohe Bay.

14      Mathers was the point man for the sale of these PVS-

15  14s.  Mathers and Abram knew and understood that; one, the

16  PVS-14 is a controlled good under the International

17  Trafficking Arms regulations administered by the Department

18  of State and may not be exported without first having applied

19  for and receiving a license.

20      Two, to apply for a license or to broker a deal

21  involving ITAR controlled goods, which is the acronym for

22  International Trafficking Arms Regulations, and they also

23  knew that it was contrary to law for a person to broker a

24  deal involving ITAR controlled goods if that person was not

25  registered with the Department of State and did not have a

1    license.  Mr. Mathers did not have a license and knew that

2    engaging in this transaction was unlawful.

3          From about October 21st to October 22nd, 2008, a

4    cooperating defendant communicated with Mathers through

5    email.  Mathers told the cooperating defendant that he had

6    two PVS-14s for sale.

7          On or about October 23rd, 2008, the cooperating

8    defendant placed a monitored call to Mathers.  During that

9    call, cooperating defendant explained that he was buying the

10   PVS-14s for an individual in Hong Kong immediately after

11   being purchased and that the PVS-14s would be shipped to Hong

12   Kong.  Mr. Mathers acknowledged by saying okay.  Mr. Mathers

13   stated that he might be able to obtain three more PVS-14s to

14   sell to the cooperating defendant for a total of five.

15         Mr. Mathers agreed to show the two PVS-14s that he

16   had in his immediate possession to the cooperating defendant

17   the next day.

18         On October 24, 2008, Mr. Mathers and co-defendant

19   Abram showed the cooperating defendant two PVS-14s that was

20   in their possession.  The cooperating defendant again

21   explained that the PVS-14s would be exported to Hong Kong and

22   that the money to pay for the PVS-14s would be coming from

23   Hong Kong.

24         As a result of this meeting, Mathers and Abram

25   agreed to sell to the cooperating defendant a total of eight

1    PVS-14s.

2        On or about October 26, 2008, Mathers left a message on

3    the cooperating defendant's cell phone letting the

4    cooperating defendant know that a total of eight PVS-14s

5    would be sold.  The cooperating defendant placed a monitored

6    telephone call to Mr. Mathers and confirmed that the

7    cooperating defendant would be buying eight PVS-14s and that

8    the total cost would be $20,000.  Mr. Mather's made

9    arrangements with the cooperating defendant to meet on

10   October 28, 2008, to exchange the PVS-14s for the money.

11            On or about October 28, 2008, Mr. Mathers and co-

12   defendant Abram met with cooperating defendant to exchange

13   the PVS-14s for the money.  Once the $20,000 had been

14   exchanged by Mr. Mathers and Abram for the eight PVS-14s, Mr.

15   Mathers and co-defendant Abram were arrested.

16            Your Honor, at to Counts 3, 4, and 11, the following

17   facts apply.

18            Mr. Mathers and Abram's stole 15 to 20 PVS-14s

19   without being detected from the First Battalion, Third Marine

20   Regimen Army.  Mr. Mathers also had an agreement with co-

21   defendant Charles Carper to sell a portion of the stolen PVS-

22   14s.  Mathers provided to Carper PVS-14s that Carper later

23   sold to other individuals pursuant to advertisement for sale

24   on eBay on the dates of April 1st, 2008, June 3rd, 2008,

25   September 23rd, 2008, and October 15, 2008, respectively.

1          Mathers advertised the sale of PVS-14s on eBay and
2  as a result of that advertisement, initiated communication
3  with an individual known as Nobuhisa Komori, a resident of
4  Japan.  Mr. Komori responded to Mathers' advertisement and
5  inquired whether Mr. Mathers would ship the PVS-14s to Komori
6  in Japan.  Mr. Mathers responded that he would ship it to the
7  highest bidder no matter where they were, thanking him for
8  the questions.

9          Mr. Komori thereafter replied thank you for
10  answering my question I will bid high price for your items.
11  Mathers thereafter directed Komori to email him at his email
12  address and the remaining conversations were conducted out of
13  eBay and exclusively through Yahoo.com.

14          Komori purchased a total of nine PVS-14s from Mr.
15  Mathers at the cost of $2,500 for each individual PVS-14.
16  The payments of $2,500 were made to Ryan Mathers and
17  correspond to payments received in Mathers' PayPal account.

18          In all nine transactions, during the period from
19  March 2008 through October 28, 2008, to include the two
20  transactions of June 9, 2008 and August 28, 2008, which are
21  Counts 4 and 11, respectively, Komori in Japan -- Mathers
22  boxed and mailed the PVS-14s to Komori in Japan after
23  receiving payment of $2,500 from Komori.  Komori received in
24  Japan all nine PVS-14s mailed by Mathers to include the two
25  PVS-14s based on the transactions listed in Counts 4 and 11

1  after making a payment of $2,500 to Mathers.

2       During the execution of a search warrant on Mathers'

3  residence following his arrest, a notebook was found with

4  notes in handwriting.  The handwriting appeared to match Mr.

5  Mathers.

6       One page in the notebook was entitled exportation

7  sales/guidelines with the following:  "Removal of firearms of

8  ammunitions outside the U.S. by anyone is an exportation.  To

9  export firearms/ammunition the licensee must obtain an export

10  license from the State Department's Director of Defense Trade

11  Controls of the Commerce Department's Bureau of Industry and

12  Security prior to exportation.  When a licensee exports

13  firearms directly to an alien's residence outside the U.S.,

14  the licensee needs only to record the name and address of the

15  foreign customer in his bound book.  ATF Form 4473 doesn't

16  need to be completed.  If the customer is going to take a

17  rifle or handgun outside the U.S. and the dealer knows that

18  he is legally obligated to inform the DDTC that the firearm

19  was sold for the purpose of exportation.

20       The next page of the notebook continued with the

21  following:  Anyone who intends to export, temporarily export

22  firearms, ammunition, or components as defined under United

23  States Ammunitions List, 22 C.F.R. 121, must obtain the

24  approval of the DDTC prior to export and import unless the

25  export or import qualifies for an exemption under the

1    provisions of the International and Arms Regulations.

2           Your Honor, this knowledge was imputed to Mr.

3    Mathers.  Also contained in this notebook was the website for

4    the exportation laws, that website being www.pmdtc.org.

5    Thank you, Your Honor.

6           THE COURT:  Okay.  Mr. Mathers, are these facts

7    stated by Mr. Thomas and set forth in detail in paragraph 8

8    of the plea agreement, are they all true and correct in every

9    respect?

10          THE DEFENDANT:  Yes, sir.

11          THE COURT:  Well, I don't need to have you go

12   through all of this detail here for me, but I -- I do want

13   you to tell me briefly what you did.

14          THE DEFENDANT:  I, and sometimes through an

15   agreement with others, sold PVS-14 night vision goggles to

16   individuals overseas knowing that I and others were doing so

17   in violation of the Export Act.  These sales occurred on the

18   dates listed in paragraph 8 of the plea agreement.

19          THE COURT:  Okay.  Mr. Thomas, anything else you

20   feel I need to cover?

21          MR. THOMAS:  Only that he knew that he needed a

22   license and did not have a license, Your Honor.

23          THE COURT:  Is that correct, Mr. Mathers, you -- you

24   knew that you needed a license to do all of this, and you did

25   not have a license?

1          THE DEFENDANT:  Yes.

2          THE COURT:  Okay.  Mr. Winter, any reason not to

3  have your client plead guilty in this matter?

4          MR. WINTER:  No, Your Honor.

5          THE COURT:  Okay.  Mr. Mathers, turning first of all

6  to the conspiracy counts, 1 and 3, first the 1, how do you

7  plead to Count 1?

8          THE DEFENDANT:  Guilty.

9          THE COURT:  And what is your plea to Count 3?

10          THE DEFENDANT:  Guilty.

11          THE COURT:  And how do you plead to Count 4?

12          THE DEFENDANT:  Guilty.

13          THE COURT:  And then to Count 11, what is your plea

14  to Count 11?

15          THE DEFENDANT:  Guilty.

16          THE COURT:  Well, I find that the defendant is fully

17  competent and capable of entering an informed plea.  I find

18  that his guilty plea is knowing and voluntary, and it is

19  supported by an independent basis in fact containing each of

20  the essential elements of the offense that he is charged

21  with.

22          I am signing a report and recommendation concerning

23  the guilty plea.  And subject to the Court's consideration of

24  the plea agreement I am recommending that the defendant be

25  adjudged guilty and have sentence imposed.  Objections to my

1  report are waived unless they are made within 14 days.

2          The presentence report is very important for

3  sentencing purposes, Mr. Mathers, so when you receive a copy

4  of it please read it over carefully.  If there is anything

5  that is not correct there's only limited time within which

6  that can be pointed out to the Court.

7          And both you and your attorney will have a full

8  opportunity to address the Court at the sentencing hearing

9  before a sentence is imposed.  Set the sentencing date and

10 time at this time.

11         THE CLERK:  October 18, 2010, 3:00 o'clock before

12 Judge Ezra.

13         THE COURT:  Mr. Thomas, any objection to bail

14 continuing as previously ordered?

15         MR. THOMAS:  No objection, Your Honor.

16         THE COURT:  Okay.  So, Mr. Mathers, the bail

17 conditions that were previously set will remain in place, so

18 continue to follow all of those requirements.

19         Okay.  Anything else to take up in this case?

20         MR. THOMAS:  No, thank you, Your Honor.

21         MR. WINTER:  No, thank you for your time.

22         THE COURT:  Okay.  We'll take a short in-court

23 recess before going on.

24         (Proceedings were concluded at 1:31 p.m.)

25

1

2

3                               CERTIFICATE

4           I, court approved transcriber, certify that the

5   foregoing is a correct transcript from the official

6   electronic sound recording of the proceedings in the above-

7   entitled matter.

8           Dated this 30th day of July, 2012.

9

10                          _____/s/ Jessica B. Cahill_____

11                          Jessica B. Cahill

12

13

14

15

16

17

18

19

20

21

22

23

24

25